**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| KIM ANCORA, | No. ED CV 09-65-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 12, 2009, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on February 11, 2009, and March 6, 2009. The parties filed a Joint Stipulation on August 6, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on May 29, 1973. [Administrative Record ("AR") at 8, 104, 113.] She has a college education [AR at 9, 170], and past relevant work experience as a photo assistant, a retail clerk, and an office clerk. [AR at 161-62, 173-82.]

Plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income payments on May 30, 2006, alleging that she has been unable to work since March 2, 2003, due to, among other things, depression, anxiety, and a sleep disorder. [AR at 54, 113-18, 160-72.] After plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 69-73, 76.] A hearing was held on November 26, 2007, at which plaintiff appeared with counsel and testified on her own behalf. Plaintiff's husband and a vocational expert also testified. [AR at 5-47.] On March 14, 2008, the ALJ issued an unfavorable decision. [AR at 51-64.] When the Appeals Council denied plaintiff's request for review of the hearing decision on September 16, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to

1  perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a
2  prima facie case of disability is established. The Commissioner then bears the burden of
3  establishing that the claimant is not disabled, because she can perform other substantial gainful
4  work available in the national economy. The determination of this issue comprises the fifth and
5  final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828
6  n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff did not engage in any substantial gainful activity since March 2, 2003, the alleged onset date of disability.[1] [AR at 56.] At step two, the ALJ concluded that plaintiff "has the following severe impairments: back pain; neck pain; abdominal pain; minor headaches; and affective mood disorder." [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 56-57.] The ALJ further found that plaintiff retained a physical residual functional capacity ("RFC")[2] "to perform the full range of light work as defined in 20 C.F.R. [§§] 404.1567(b), 416.967(b)."[3] [AR at 57-63.] With regard to plaintiff's mental RFC, the ALJ determined that plaintiff "is limited to simple repetitive tasks." [AR at 63.] At step four, the ALJ concluded that plaintiff cannot perform her past relevant work. [Id.] At step five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that plaintiff can perform. [AR at 63-64.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 64.]

---

[1]  The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through December 31, 2008. [AR at 56.]

[2]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]  20 C.F.R. §§ 404.1567(b) and 416.967(b) define light work as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Further, a light work job may require "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." Id. However, "[t]o be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." Id.

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ improperly: (1) considered the treating psychiatrist's opinion; (2) considered the state agency physician's findings; (3) solicited testimony from the vocational expert; (4) concluded that plaintiff can work as an office helper and as an electronics worker; and (5) considered plaintiff's credibility and testimony. [See Joint Stipulation ("JS") at 2-3.] As explained below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### A.   THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE

Plaintiff contends that the ALJ improperly considered the medical evidence, including the opinion of Dr. Thomas Curtis, plaintiff's treating psychiatrist, and the findings of the state agency physician. [JS at 3-4, 6-8.] Specifically, plaintiff argues that the ALJ failed to properly reject or credit the findings of Dr. Curtis and the state agency physician. [Id.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

### 1.   Dr. Curtis' Findings

According to the medical record, Dr. Curtis treated plaintiff from April 2003 to August 2003. [AR at 262-86.] On April 29, 2003, Dr. Curtis conducted a psychiatric evaluation and psychological testing of plaintiff. [AR at 268-81.] Dr. Curtis noted that plaintiff experienced anxiety and stress due to a job that she held from September 2001 to March 1, 2003. [AR at 269-72.] He also noted that after plaintiff was terminated from that job, for reasons that she claimed were wrongful, she

continued to experience psychological and physical symptoms, including, among others, depression; anxiety; fatigue; disturbed appetite and sleep; headaches; gastrointestinal distress; tachycardia; shortness of breath; and neck, shoulder, back, and muscle pain. [AR at 271-72.] Dr. Curtis related that during his examination of plaintiff, she exhibited abnormal behavior, appeared distressed, and demonstrated diminished cognitive functioning. [AR at 272.] He concluded that plaintiff is deficient in concentration, attention, short-term memory, and reading comprehension, and that these deficits are caused by her "overwhelmed psychological coping mechanisms." [Id.] A battery of psychological tests yielded "highly abnormal" results that confirmed that plaintiff experiences "abnormal somatization, depression, anxiety, . . . dependency/failed repression, mistrust/touchiness, mental confusion/dysfunction and social and emotional withdrawal." [AR at 273, 275.] He diagnosed plaintiff with depressive disorder not otherwise specified with anxiety and panic attacks, and found her to be "temporarily totally disabled on a psychiatric basis." [AR at 275-76.] Dr. Curtis opined that plaintiff's "emotional condition would probably soon deteriorate into worsened emotional dysfunction" if she attempted to return to work. [AR at 276.]

In an undated Mental Disorder Questionnaire Form [AR at 263-65], Dr. Curtis noted that plaintiff is overwhelmed easily and has difficulty with social functioning because she becomes anxious while in public and while interacting with people who are not her immediate family members. [AR at 263, 265.] He also remarked that she has difficulty maintaining concentration and attention when she is anxious, such as when she is subject to "public exposure." [AR at 265.]

In the decision, the ALJ summarized Dr. Curtis' April 29, 2003, findings, noting his diagnosis that plaintiff has depressive disorder not otherwise specified with anxiety and panic attacks and that her psychological condition also affects her medical condition. [AR at 58.] The ALJ also acknowledged Dr. Curtis' opinion that plaintiff is "too beset by medical symptoms, anxious, agitated, and depressed to work," and that she needs to work on her psychological issues before she can return to work. [Id.] However, in summarizing Dr. Curtis' findings, the ALJ did not discuss Dr. Curtis' opinion concerning plaintiff's specific limitations with regard to concentration, social functioning, attention, and comprehension. The ALJ also failed to explain the weight he afforded to Dr. Curtis' findings. This was error. The ALJ was required to provide an explicit explanation,

1  supported by evidence in the record, of the weight given to plaintiff's treating physicians' medical
2  opinions.  20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling 96-2p[4] ("the notice of the
3  determination or decision must contain specific reasons for the weight given to the treating
4  source's medical opinion, supported by the evidence in the case record, and must be sufficiently
5  specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating
6  source's medical opinion and the reasons for that weight.").  Since the ALJ did not include in his
7  mental RFC determination any of plaintiff's specific mental limitations assessed by Dr. Curtis (such
8  as her deficits in concentration, attention, short-term memory, reading comprehension, and social
9  functioning) [see AR at 63], it appears that the ALJ implicitly rejected Dr. Curtis' findings.  This too
10 was erroneous.  To properly reject Dr. Curtis' findings, the ALJ was required to "do more than offer
11 his conclusions.  He [was required to] set forth his own interpretations and explain why they, rather
12 than the doctors', [were] correct."  Orn, 495 F.3d at 632.  See Embrey v. Bowen, 849 F.2d 418,
13 422 (9th Cir. 1988) (in disregarding the findings of a treating physician, the ALJ must "provide
14 detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies
15 to "the specific medical opinions and findings he rejects").

16        Defendant asserts that the ALJ was not required to weigh Dr. Curtis' findings because they
17 pertained to a time period (ending with November 13, 2003) in which the Administration had
18 previously denied plaintiff benefits.  [JS at 4-5; see AR at 65-68.]  Defendant argues that the ALJ's
19 consideration of plaintiff's longitudinal medical record "does not change the res judicata effect of
20 the earlier decision."  [JS at 5.]  Defendant's arguments are unavailing.  First, the Court will not rely
21 on reasons to support the decision not provided by the ALJ.  "If the decision on its face does not
22 adequately explain how a conclusion was reached, that alone is grounds for remand."  Barbato
23 v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1276 n.2 (C.D.Cal. 1996) (quoting Williams v.
24 Bowen, 664 F.Supp. 1200, 1207 (N.D.Ill. 1987)); see also Ceguerra v. Secretary of Health &

---

[4] Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

Human Services, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."). Here, the ALJ did not say that he rejected Dr. Curtis' findings because they pertained to a time period in which benefits had previously been denied. In fact, the ALJ did not even *mention* plaintiff's previous denial, even though plaintiff asserted a disability start date of March 2, 2003, i.e., more than eight months of her asserted period of disability pertained to the period of time in which the Administration had previously denied benefits. [See AR at 65-68 (denying benefits on November 13, 2003).]

Second, a final decision concerning the denial of Social Security benefits may be reopened within four years of the Administration's decision if there is "good cause" -- including if new material evidence relevant to the disability determination is furnished. See 20 C.F.R. §§ 404.987, 404.988(b), 404.989(a)(1). Here, plaintiff's May 2006 applications for benefits were submitted within four years of her November 2003 denial. [AR at 54, 65-68, 113-18, 160-72.] In reaching his decision in March 2008, the ALJ was presented with medical evidence that was not considered by the Administration when it denied benefits to plaintiff on November 13, 2003. Included in the "new material evidence" furnished to the ALJ was Dr. Curtis' findings. [Compare AR at 58-63 (ALJ summarizing the medical evidence, including Dr. Curtis' findings), with AR at 65 (Administration listing the medical reports used in the November 13, 2003, denial, not including Dr. Curtis' findings).] As the ALJ considered Dr. Curtis' 2003 findings, in addition to several other medical records dated before November 2003 [see AR at 58-59], and did not mention plaintiff's previous denial of benefits, res judicata does not appear to prevent the ALJ from considering medical evidence dated prior to November 2003. Therefore, remand is warranted so that the ALJ can explicitly weigh and properly credit or reject Dr. Curtis' findings.

### 2. The State Agency Physician's Opinion

On September 22, 2006, Dr. R. Tashjian, a non-examining medical consultant, completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique form. [AR at 418-27.] Dr. Tashjian indicated that among other functional limitations, plaintiff is moderately limited in her abilities to maintain social functioning (including interacting appropriately with the general public, and in getting along with coworkers or peers without distracting them or

exhibiting behavioral extremes); maintain concentration, persistence or pace (including carrying out detailed instructions); and understand and remember detailed instructions. [AR at 422, 425-26.] In elaborating on plaintiff's functional capacity, Dr. Tashjian opined that plaintiff "is capable of doing 'one to two step' type of jobs; make simple, work-related judgments and decisions; respond appropriately to supervision and work situation, without frequent contact with co-workers and minimal public contact; [and] deal with changes in routine work setting." [AR at 427.]

In the decision, the ALJ accurately summarized Dr. Tashjian's findings; however, the ALJ failed to explain what, if any, weight he afforded those findings. [AR at 61.] Social Security Ruling 96-6p specifically requires that an explanation of the weight given to the opinions of state agency consultants be included in the ALJ's final decision. See SSR 96-6p ("Findings . . . made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and "[a]dministrative law judges . . . may not ignore these opinions and must explain the weight given to these opinions in their decisions."). In determining that plaintiff was mentally able to perform simple and repetitive tasks, it appears that the ALJ implicitly credited Dr. Tashjian's findings that plaintiff could make simple judgments and decisions. [See AR at 63, 427.] However, there is no indication that the ALJ took into account the remaining specific limitations set forth in the Mental Residual Functional Capacity Assessment and Psychiatric Review Technique form, and the ALJ provided no explanation why these limitations were not adopted.[5] The ALJ thus

---

[5] Significantly, the jobs of an office helper and electronics worker, which the ALJ concluded that plaintiff is capable of performing [AR at 64], appear to be incompatible with plaintiff's mental limitations assessed by Dr. Tashjian. According to the Dictionary of Occupational Titles ("DOT"), a person working as an office helper or electronics worker must be able to engage in "Level 2" reasoning, which includes an ability to "carry out detailed . . . written or oral instructions." DOT No. 239.567-010 (Office Helper), DOT No. 726.687-010 (Electronics Worker); see also DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991) (defining Level 2 reasoning). The ALJ's finding that plaintiff can perform these two jobs seems to conflict with Dr. Tashjian's finding that plaintiff would have moderate difficulties remembering and carrying out detailed instructions. [AR at 425.] In fact, according to Dr. Tashjian's finding that plaintiff's can perform one- to two-step jobs and make simple decisions [AR at 427], Dr. Tashjian implicitly concluded that plaintiff is able to perform jobs requiring, at most, Level 1 reasoning. See DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991) (defining Level 1 reasoning

effectively rejected a portion of Dr. Tashjian's medical opinion. It follows, therefore, that the ALJ did not provide sufficient reasons for that rejection. See SSR 96-6p; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). As such, remand is warranted so that the ALJ can explicitly weigh and properly credit or reject Dr. Tashjian's findings.

### B.  THE ALJ'S CREDIBILITY DETERMINATION

Plaintiff contends that the ALJ improperly considered her testimony and erred in finding her incredible. [JS at 16-18.] After summarizing the medical evidence, the ALJ concluded that plaintiff's "testimony and evidence, although appearing sincere, is not fully credible regarding the extent, intensity and duration of the alleged subjective symptoms and functional limitations and restrictions." [AR at 62.] As the ALJ's credibility determination was based, in part, on his analysis of the medical evidence, which the Court finds was improper as to Dr. Curtis and Dr. Tashjian, the ALJ must reassess plaintiff's credibility after he has reconsidered the medical evidence.

### C.  THE VOCATIONAL EXPERT'S TESTIMONY

Plaintiff asserts that the ALJ erred in connection with the vocational expert's testimony, as the hypothetical question posed to the vocational expert improperly excluded some of plaintiff's limitations. [JS at 9-10.] "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (citing Embrey, 849 F.2d at 422). Here, the ALJ based his questions to the vocational expert on his consideration of

---

positions as requiring "commonsense understanding to carry out simple one- or two-step instructions.").

the medical evidence. As such, new vocational expert testimony may be necessary if, after reconsidering the medical evidence discussed above, the ALJ credits any of the specific limitations assessed by Dr. Curtis and/or Dr. Tashjian that the ALJ previously excluded from his mental RFC determination. Since new vocational expert testimony may be warranted, the Court will not address plaintiff's contention that the ALJ improperly concluded, based on the vocational expert's testimony, that plaintiff can perform the jobs of an office helper and an electronics worker. [See AR at 63-64; JS at 11-14.]

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to: 1) reconsider the medical evidence; 2) reconsider plaintiff's credibility; and 3) if warranted, obtain new testimony from a vocational expert. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 25, 2010

  /s/ Paul L. Abrams  
  PAUL L. ABRAMS  
  UNITED STATES MAGISTRATE JUDGE